# Exhibit 1

Case 2:18-cv-02510-ADS-AKT   Document 7-1   Filed 06/22/18   Page 1 of 22 PageID #: 53

Mr. Jeffery Glen

1.  I signed contract # 400021-16 on October 10th 2016 for the amount of $ 108,900,000.00 US dollars of which Petroleum and Materials would have made 10% in commission had Mr. Leonid Shyman not cancelled this contract because of cause of manufacture. Total commission payable over 4 years would have been $10,890,000.00 US dollars, this amounts to $2,722,500.00 per year

2.  The payment of $918,000.00US dollars was made for commission earned to date.

3.  The contract I signed, which copies are enclosed was signed and seal attached. I used an embosser .

4.  The contract that have the cost of $918,000.00 was never signed by me nor do I have a blue rubber stamp .

5.  I called Ms. Elena and asked her about this new signed contract, to which she said that it was the only way for me to get paid my part commission, so that I continue with Leonid.

6.  Mr. Leonid sent me a letter asking me to continue to help his company Pavlograd in acquiring a sophisticated CNC equipment that can fabricate these seamless pipes. The reason is that each 3000mm pipes costs over $7,000 US dollars to manufacture.

7.  I visited several company in the US and located one manufacture for this specialized equipment, and sent Leonid Shyman the specs.

I would like to have my day in court to show all the paperwork because I was deceived by Mr. Leonid Shyman

Thank You

The only copy I have ever signed and sealed

This amount is for $108,900,000.00 US dollars and my total commission payable over 4 years and it was for 10% which makes it $10,890, 00.00 US dollars = to $2,722,500.00 US dollars per year for 4 years

SENT TO ME BY DHL
WAY BILL 26 – 5987 – 1351

| КОНТРАКТ № 400023-16 | CONTRACT № 400023-16 |
|---|---|
| м. Павлоград                    10.10.2016 р. | Pavlograd                    10.10.2016 |
| PETROLEUM & MATERIALS LLC, 350 Veterans Memmorial Hwy. Commack, штат Нью-Йорк 11725 іменоване надалі "**Продавець**", в особі Генерального директора Dewan Bachai, що діє на підставі Установчого договору і Уставу компанії, з однієї сторони, і **Державне підприємство «Науково-виробниче об'єднання «Павлоградський хімічний завод» (ДП «НВО «ПХЗ»)**, м. Павлоград, Україна, іменоване в подальшому «Покупець», в особі Генерального директора ДП «НВО «ПХЗ»- Головного конструктора РДТП Шимана Леоніда Миколайовича, що діє на підставі Статуту з другої сторони далі спільно іменовані Сторони, уклали даний Контракт про нижченаведене: | PETROLEUM & MATERIALS LLC, 350 Veterans Memmorial Hwy. Commack, New York 11725, hereinafter referred to as the "**Seller**", represented by General Director Dewan Bachai acting on the basis of the Memorandum and Articles of Association on the one part, and **State Enterprise Research Industrial Complex Pavlograd Chemical Plant (SE RIC "PCP")**, Pavlograd, Ukraine, hereinafter referred to as the "Buyer", represented by Leonid M. Shyman, General Director – General Designer of SPRM, acting on the basis of the Company Charter, on the other part, hereafter jointly referred to as the Parties, have concluded the Contract as follows: |
| 1. Предмет контракту | 1. Subject of the Contract |
| 1.1. Продавець зобов'язується поставити, а Покупець оплатити та прийняти Товар - **Безшовні труби з легованої сталі для хімічних виробництв** повне найменування, асортимент поставки та технічні характеристики якого вказані в Специфікаціях (Додатках) до Контракту, які є складовою та невід'ємною частиною даного Контракту | 1.1. The seller agrees to deliver and Buyer to accept and pay for the Product - **Seamless alloy steel tube for chemical production**, the full name, the range of delivery and the Technical characteristics of wihch are specified in the Specifications (Annexes) to the Contract that are an integral part of this Contract. |
| 1.2. Якість товару повинна відповідати технічним характеристикам (Додаток до Контракту) або технічним вимогам заводу-виробника та підтверджуватись сертифікатом про якість, виданим заводом-виробником. | 1.2. The quality of the Goods shall meet the technical characteristics (Annex to the Contract) or technical requirements of manufacturing plant's and shall be supported by a Quality Certificate issued by the manufacturing plant. |
| 1.3. Загальна кількість Товару по Контракту – згідно кількості вказаній у додатках (Специфікаціях) Контракту. | 1.3. The total number of Goods delivered under the Contract shall be in accordance with the quantity specified in the Annexes (Specifications) of the Contract. |
| 2. Ціна та загальна сума Контракту | 2. Price and total value of the Contract |
| 2.1. Валюта розрахунків по Контракту – долар США (USD) | 2.1. The Currency of settlements under the Contract is US dollars (USD). |
| 2.2. Загальна вартість Контракту складає 108 900 000,00 USD (сто вісім мільйонів дев'ятсот тисяч доларів США,00 центів) | 2.2. The total value of the Contract is 108 900 000,00 USD (one hundred eight million nine hundred thousand dollars, 00 cents) |
| 3. Строки та умови поставки | 3. Terms and Conditions of Delivery |

| | |
|---|---|
| 3.1. Поставка Товару за даним Контрактом здійснюється на умовах FCA (ІНКОТЕРМС-2010), у строк 70 (семидесяти) календарних днів з моменту здійснення Покупцем оплати, згідно п.4.1. Контракту. | 3.1. The Goods under this Contract is supplied on FCA (INCOTERMS-2010) within the period of 70 (seventy) calendar days from the date of the the implementation of the Buyer payment in accordance with clause 4.1. Contract. |
| 3.2. Разом з Товаром Продавець направляє Покупцеві оригінали наступних документів: <br>- рахунок-фактуру; <br>- сертифікат про походження Товару; <br>- сертифікат відповідності; <br>- експортну декларацію; <br>- пакувальні аркуші та інше. | 3.2. Along with the Goods the Seller shall send to the Buyer the following original documents: <br>- Invoice; <br>- Certificate of Origin; <br>- Certificate of Conformity; <br>- Export Declaration <br>- Packing Lists etc. |
| 3.3. Виробник Товару та країна походження вказуються в товаросупроводжувальних документах. | 3.3. The manufacturer and the country of origin of the Goods shall be specified in shipping documents. |
| 3.4. Товари повинні бути упаковані таким чином, щоб забезпечити їх збереження при тривалому транспортуванні до кінцевого пункту призначення. Продавець несе відповідальність за збитки Покупця, спричинені неналежною упаковкою. | 3.4. The Goods shall be packed in such a way as to ensure its safety during long distance transportation to the final destination. The Seller is liable for the Buyer's damages caused by improper packaging. |
| 3.5. Сторони підтверджують, що Товар який підлягає поставці по даному Контракту, перетинатиме державний кордон та буде ввезено на територію держави Україна. | 3.5. The Parties confirm that the Goods to be supplied under this Contract shall cross the state border and be imported into the Ukraine territory. |
| **4. Умови платежу** | **4. Terms of Payment** |
| 4.1. Порядок та умови оплати по даному Контракту визначаються в залежності від вартості, кількості та номенклатури кожної партії Товару та вказуюється у додатках даного Контракту (Специфікаціях / додаткових угодах), що є його складовою та невід'ємною частиною. | 4.1. The procedure and terms of payment under this Contract shall be determined depending on the value, number and range of each consignment and withouts in the annexes to this Contract (Specifications / additional agreements), which are its constituent and integral part. |
| 4.2. У разі порушення Покупцем умов платежу за цим договором Продавець має право призупинити виконання своїх зобов'язань за договором та/або анулювати Контракт і вимагати від Покупця відшкодування збитків, викликаних порушенням умов платежу. | 4.2 Should the Buyer breach the terms of payment hereunder, the Seller is entitled to suspend performance of his obligations under this Contract and /or terminate this Contract, and to demand from the Buyer compensation for damages caused as a result of the breach of the terms of payment. |
| 4.3. Усі банківські витрати на території країни Продавця будуть оплачені за рахунок Продавця, на території країни Покупця - за рахунок Покупця. | 4.3. All bank charges in the Seller's country shall be paid by the Seller, and those in the Buyer's country shall be paid by the Buyer. |
| **5. Здавання-прийняття** | **5. Acceptance** |
| 5.1. Товари вважаються зданими Продавцем і прийнятим Покупцем: <br>- за кількістю - згідно товаросупроводжуючих документів <br>- за якістю - згідно якості, яка зазначається у | 5.1 The Goods is considered to be delivered by the Seller and accepted by the Buyer as follows: <br>- in respect of quantity — according to the shipping documents <br>- in respect of quality - according to the quality |

| | |
|---|---|
| паспорті якості заводу-виробника та умов, зазначених у Контракті.<br><br>Остаточне приймання товарів здійснюється після їх прибуття на склад Покупця. | specified in the manufacturing plant's Certificate of Quality and conditions set forth in the Contract.<br><br>Final acceptance of the Goods is carried out after its arrival to the Buyer's warehouse. |
| 5.2. Термін для пред'явлення претензій, пов'язаних з прихованими недоліками товару - 60 (шістдесят) днів з дати поставки на склад покупця. | 5.2 Time for complaint related to the latent defects of the Goods is 60 (sixty) days from the date of the Goods delivery to the Buyer's warehouse. |
| 5.3 При виявленні недостачі або невідповідності Товару технічної документації, Покупець негайно інформує про це Продавця в письмовому вигляді і запрошує представника Продавця для участі в прийманні. Якщо після закінчення 3 (трьох) днів від Продавця не отримано відповіді про участь у прийманні, подальше приймання проводиться без представника Продавця, але з обов'язковою присутністю третьої незацікавленої особи, при цьому витрати з приймання, пов'язані з участю третьої особи, відносяться на рахунок сторони, яка не з'явилася. | 5.3 If found the Goods shortage or non-conformity to the technical documentation, the Buyer shall immediately inform the Seller of this fact in written form and shall invite the Seller's representative to take part in the acceptance procedure. If after 3 (three) days there is no reply from the Seller relatively taking part in the acceptance, the further acceptance procedure shall be carried out without the Seller's representative, but always in the presence of the third party. In this case the acceptance charges connected with participation of the third party shall be paid by the Party who failed to appear. |
| 6. Відповідальність | 6. Accountability |
| 6.1. Сторони самостійно і безпосередньо несуть відповідальність за виконання цього Контракту. Ніякі претензії, позови і інші правові вимоги не можуть бути пред'явлені до держав Україна та США або до окремих їх органів за невиконання або неналежне виконання цього Контракту. | 6.1. The Parties independently and directly bear responsibility for the fulfillment of the Contract. No claims, civil complaints or other legal demands should be made to the states of Ukraine and the USA or to their separate bodies for non-fulfillment or improper fulfillment of the Contract. |
| 6.2. Продавець несе відповідальність за Контрактом за будь-яку невідповідність товару, яка існує в момент переходу ризику на Покупця, якщо навіть ця невідповідність стає очевидною тільки пізніше. | 6.2. Under the present Contract the Seller is responsible for any Goods non-conformity available at the time of risk transfer to the Buyer, even if this non-conformity will appear more lately. |
| 6.3. У разі прострочення поставки Товару більше 90 днів з дня здійснення оплати, Продавець відшкодовує всі документально підтверджені штрафні санкції, застосовані до Покупця відповідними державними органами у зв'язку з порушеннями валютного законодавства України, пов'язаному з виконанням умов цього Контракту. | 6.3. In case of delay in the Goods delivery of more than 90 days from the date of the payment, the Seller shall reimburse all documented penalties applied to the Buyer by the relevant state authorities in connection with violations of the currency legislation of Ukraine related to execution of this Contract. |
| 6.4. У разі прострочення поставки Товару, понад трьох місяців з дня здійснення Покупцем оплати, Продавець, крім сплати зазначених штрафних санкцій, повертає | 6.4. In case of delay in the Goods delivery of more than three months from the date of the Buyer's payment, the Seller shall return all the money besides the payment of the said fines. |

| | |
|---|---|
| 6.5. Строк стягнення штрафу настає наступного дня після закінчення терміну, коли Сторона повинна була виконати свої зобов'язання за даним Контрактом. | 6.5. The term of recovery of penalty comes the next day after the expiration of time when the Party should have met its obligations under the present Contract. |
| **7. Форс-мажор** | **7. Force Majeure** |
| 7.1. Сторони звільняються від відповідальності за часткове або повне невиконання зобов'язань за даним Контрактом, якщо воно з'явилося наслідком нездоланної сили, а саме: стихійних лих, війни, воєнних дій будь-якого характеру, блокади, страйків, ембарго на експорт або імпорт, урядових розпоряджень або постанов, що перешкоджають виконанню умов даного Контракту. При цьому строк виконання зобов'язань за даним Контрактом відсувається відповідно до часу, протягом якого діяли такі обставини і їхні наслідки. | 7.1. The Parties are released from responsibility for partial or complete non-execution of their liabilities under the Contract should this non-execution be caused by the force majeure circumstances including natural disasters, war, military actions of any kind, blockade, strikes, embargo on export-import operations, government prescriptions or decrees, if such circumstances have directly affected the execution of terms of the present Contract. In such case the time stipulated for the execution of the obligations under the Contract shall be extended for a period equal to that during which such circumstances and their consequences will remain in force. |
| **8. Арбітраж** | **8. Arbitration** |
| 8.1. Продавець і Покупець повинні прийняти всі можливі міри для врегулювання шляхом переговорів усіх суперечок і розбіжностей, що можуть виникнути при виконанні даного Контракту. | 8.1. The Seller and the Buyer shall take all possible measures to settle any disputes or differences, which may arise out of the present Contract by negotiations. |
| 8.2. Якщо Сторони не прийшли до згоди, усі суперечки і розбіжності, що виникли при виконанні даного Контракту або в зв'язку з ним, будуть вирішуватися в Міжнародному Комерційному Арбітражному суді при Торгово - промисловій палаті України м. Києва, з регламентом зазначеного суду, рішення якого буде обов'язковим для обох Сторін і оскарженню не підлягає. Сторони домовилися, що правом регулюючим даний Контракт, є матеріальне право України. | 8.2. If the Parties fail to come to agreement, all the disputes and differences arisen out of the present Contract or in connection with it, will be settled in the International Commercial Arbitration Court at the Chamber of Commerce and Industry of Ukraine, Kiev in accordance with the Rules of the mentioned Court which decision will be final and binding to both Parties. The Parties have come to agreement that the law governing this Contract is the law of substance of Ukraine. |
| **9. Строк дії Контракту** | **9. Contract Validity Term** |
| 9.1. Даний Контракт набирає чинності після його підписання обома Сторонами та діє до 31.12.2020р. | 9.1. The present Contract comes into force after its signing by the both Parties and shall be valid till 31/12/2020. |
| 9.2. Закінчення строку дії даного Контракту не звільняє Сторони від відповідальності за його порушення, яке мало місце на протязі дії даного Контракту. | 9.2. The termination of validity of the present Contract does not release the Parties from the responsibility for its breach which took place during the validity of the present Contract. |

| | |
|---|---|
| **10. Інші умови** | **10. Other Conditions** |
| 10.1. Даний Контракт складений у 2-х екземплярах по одному для кожної зі Сторін українською та англійською мовами, причому обидва тексти мають однакову юридичну силу. | 10.1. The Present Contract is made in 2 copies - one copy for each Party in the Ukrainian and the English languages, and both texts have identical legal force. |
| 10.2. Усі доповнення і зміни до Контракту будуть дійсні за умови, що вони будуть зроблені в письмовій формі і підписані обома Сторонами. | 10.2. All Addenda and Modifications to the Contract are valid under the condition they will be made in written form and signed by the both Parties. |
| 10.3. Факсимільні екземпляри даного Контракту, усіх можливих змін і доповнень до нього й інших контрактних документів мають юридичну силу до заміни їх оригіналами. | 10.3. The facsimile copies of the Contract, all possible Modifications and Addendums to it as well as other contractual documents have legal force till their replacement by originals. |
| **11. Юридичні адреси та реквізити** | **11. Legal Addresses and Bank Details** |
| **11.1. Продавець:** | **11.1. The Seller:** |
| **PETROLEUM & MATERIALS LLC**<br><br>350 Veterans Memmorial Hwy. Commack, NY 11725<br><br>NewYork USA<br><br>account type: 813302358 | **PETROLEUM & MATERIALS LLC**<br>350 Veterans Memmorial Hwy. Commack, NY 11725<br><br>NewYork USA<br><br>account type: 813302358 |
| **Банківські реквізити** | **Bank details:** |
| Банк-отримувач:<br><br>J.P. MORGAN CHASE BANK, New York, USA<br><br>ABA Routing number 021000021<br><br>Swift: CHASUS33<br><br>Chase 270 Park Ave., New York, NY 10017. | Bank-receiver:<br><br>J.P. MORGAN CHASE BANK, New York, USA<br><br>ABA Routing number 021000021<br><br>Swift: CHASUS33<br><br>Chase 270 Park Ave., New York, NY 10017. |

| Адреса філії-одержувача: | Branch address-recipient: |
|---|---|
| 39 Vanderbilt Parkway Commack, NY 11725 NewYork USA | 39 Vanderbilt Parkway Commack, NY 11725 New York, USA |
| **11.2. Покупець:** | **11.2. The Buyer:** |
| **ДП «НВО «ПХЗ»** Україна, 51402, м. Павлоград, Дніпропетровська обл., вул. Заводська 44 | **SE RIC PCP** 44, Zavodska Str., Pavlograd, Dnipropetrovsk region, Ukraine, 51402 |
| **Банківські реквізити:** SWIFT: UGASUAUK JSB «UKRGASBANK», KYIV, UKRAINE P/p 260065167 Банк посередник J.P. MORGAN CHASE BANK, New York, USA SWIFT CHASUS33 Acc. 899579957 | **Bank details:** SWIFT: UGASUAUK JSB «UKRGASBANK», KYIV, UKRAINE acc 260065167 PAY THRU: J.P. MORGAN CHASE BANK, New York, USA SWIFT CHASUS33 Acc. 899579957 |
| **Підписано від імені Продавця/ Signed on behalf of the Seller** | **Підписано від імені Покупця/ Signed on behalf of the Buyer** |
| **PETROLEUM & MATERIALS LLC** Генеральный директор / General Director м.п./Seal          Dewan Bachai | **ДП «НВО «ПХЗ» / SE RIC «PCP»** Генеральный директор / General Director м.п./Seal          Mr. Leonid Shyman |

**Додаток 1 / Annex 1**

до Контракту №400023-16 від 10.10.2016р.

to Contract No400023-16 dated 10.10.2016

## СПЕЦИФІКАЦІЯ №1 / SPECIFICATION  No.1

| | | | |
|---|---|---|---|
| м. Павлоград | 2016 р. | Pavlograd | 2016 |

**PETROLEUM & MATERIALS LLC, 350 Veterans Memmorial Hwy. Commack, штат Нью-Йорк 11725**

**PETROLEUM & MATERIALS LLC, 350 Veterans Memmorial Hwy. Commack, New York 11725,**

іменоване надалі **«Продавець»**, в особі Генерального директора Dewan Bachai, що діє на підставі Установчого договору і Уставу компанії, з однієї сторони, і

hereinafter referred to as the **"Seller"**, represented by Mr. Dewan Bachai, General Director, acting on the basis of the Memorandum and Articles of Association on the one part, and

**Державне підприємство «Науково-виробниче об'єднання «Павлоградський хімічний завод» (ДП «НВО «ПХЗ»)**, м. Павлоград, Україна, іменоване в подальшому «Покупець», в особі Генерального директора ДП «НВО «ПХЗ»- Головного конструктора РДТП Шимана Леоніда Миколайовича, що діє на підставі Статуту, з другої сторони,
далі спільно іменовані Сторони, уклали дану Специфікацію №1 про поставку Товара, а саме:

**State Enterprise Research Industrial Complex Pavlograd Chemical Plant (SE RIC "PCP")**, Pavlograd, Ukraine, hereinafter referred to as the **"Buyer"**, represented by Mr. Leonid N. Shyman, General Director – General Designer of SPRM, acting on the basis of the Company Charter, on the other part,
hereafter jointly referred as Parties, have concluded this Specification No.1 as follows:

1. Безшовні труби з легованої сталі для хімічних виробництв діаметром 122 мм.

1. Seamless pipes made of alloy steel for chemical production with diameter of 122 mm.

| № | Постачання по рокам/ Deliveries | Довжина труби, метрів/ Pipe length, meters | Кіль-ть шт./ Quantity, pcs | Кіль-ть метрів ног./ Quantity, pcs | Ціна за метр ног., USD/ Unit price, USD | Вартість, USD / Value, USD |
|---|---|---|---|---|---|---|
| 1 | 2017 | 2 | 100 | 200 | 2 000,00 | 400 000,00 |
| 2 | 2018 | 2 | 500 | 1000 | 2 000,00 | 2 000 000,00 |
| 3 | 2019 | 2 | 2000 | 4000 | 2 000,00 | 8 000 000,00 |
| 4 | 2020 | 2 | 4000 | 8000 | 2 000,00 | 16 000 000,00 |
| | | | ВСЬОГО, USD / TOTAL, USD: | | | 26 400 000.00 |

2. Вимоги до документації: Технологічна документація має передаватися українською та англійською мовами.

2. Requirements to the documentation: Technological documentation to be transferred shall be both in Ukrainian and English

3. Порядок здачі-приймання: Порядок здачі-приймання виконується у відповідності з умовами контракту.

3. Acceptance procedure:
The acceptance procedure is carried out according to the terms of the Contract.

**Підписано від імені Продавця /Signed on behalf of the Seller**

**Підписано від імені Покупця /Signed on behalf of the Buyer**

**PETROLEUM & MATERIALS LLC**

**ДП «НВО «ПХЗ» / SE RIC «PCP»**

Генеральный директор / General Director

Генеральный директор / General Director

М.п./Seal _____ Dewan Bachai

М.п./Seal _____ Mr. Leonid Shyman
Л.М.Шиман

до Контракту № 400023-16 від 10.10.2016

to Contract No 400023-16 dated 10.10.2016

## СПЕЦИФІКАЦІЯ №2 / SPECIFICATION No.2

| м. Павлоград | 2016 р. | Pavlograd | 2016 |
|---|---|---|---|

PETROLEUM & MATERIALS LLC, 350 Veterans Memmorial Hwy. Commack, штат Нью-Йорк 11725

іменоване надалі «Продавець», в особі Генерального директора Dewan Bachai, що діє на підставі Установчого договору і Уставу компанії, з однієї сторони, і

Державне підприємство «Науково-виробниче об'єднання «Павлоградський хімічний завод» (ДП «НВО «ПХЗ»), м. Павлоград, Україна, іменоване в подальшому «Покупець», в особі Генерального директора ДП «НВО «ПХЗ»- Головного конструктора РДТП Шимана Леоніда Миколайовича, що діє на підставі Статуту, з другої сторони,

далі спільно іменовані Сторони, уклали дану Специфікацію №2 про поставку Товара, а саме:

PETROLEUM & MATERIALS LLC, 350 Veterans Memmorial Hwy. Commack, New York 11725,

hereinafter referred to as the **"Seller"**, represented by Mr. Dewan Bachai, General Director, acting on the basis of the Memorandum and Articles of Association on the one part, and

State Enterprise Research Industrial Complex Pavlograd Chemical Plant (SE RIC "PCP"), Pavlograd, Ukraine, hereinafter referred to as the **"Buyer"**, represented by Mr. Leonid N. Shyman, General Director – General Designer of SPRM, acting on the basis of the Company Charter, on the other part,

hereafter jointly referred as Parties, have concluded this Specification No.2 as follows:

1. Безшовні труби з легованої сталі для хімічних виробництв діаметром 300 мм.

1. Seamless pipes made of alloy steel for chemical production with diameter of 300 mm.

| № | Постачання по рокам/ Deliveries | Довжина труби, метрів/ Pipe length, meters | Кіль-ть шт./ Quantity, pcs | Кіль-ть метрів пог./ Quantity, pcs | Ціна за метр пог., USD/ Unit price, USD | Вартість, USD / Value, USD |
|---|---|---|---|---|---|---|
| 1 | 2017 | 4 | 250 | 1000 | 7 500,00 | 7 500 000,00 |
| 2 | 2018 | 4 | 500 | 2000 | 7 500,00 | 15 000 000,00 |
| 3 | 2019 | 4 | 1000 | 4000 | 7 500,00 | 30 000 000,00 |
| 4 | 2020 | 4 | 1000 | 4000 | 7 500,00 | 30 000 000,00 |
| | | | | | **ВСЬОГО, USD / TOTAL, USD:** | **82 500 000.00** |

| | |
|---|---|
| **2.** Вимоги до документації: Технологічна документація має передаватися українською та англійською мовами. | **2.** Requirements to the documentation: Technological documentation to be transferred shall be both in Ukrainian and English |
| **3.** Порядок здачі-приймання: Порядок здачі-приймання виконується у відповідності з умовами контракту. | **3.** Acceptance procedure: The acceptance procedure is carried out according to the terms of the Contract. |

| | |
|---|---|
| **Підписано від імені Продавця /Signed on behalf of the Seller** | **Підписано від імені Покупця /Signed on behalf of the Buyer** |
| **PETROLEUM & MATERIALS LLC** | **ДП «НВО «ПХЗ» / SE RIC «PCP»** |
| Генеральный директор / General Director | Генеральный директор / General Director |
| м.п./Seal　　　　　Dewan Bachai | м.п./Seal　/　　Mr. Leonid Shyman　Л.М.Шиман |

**Додаток 2 / Annex 2**
до Контракту №400023-16 від 10.10.2016р.

to Contract No400023-16 dated 10.10.2016

| ТЕХНІЧНІ ХАРЕКТЕРИСТИКИ<br>безшовних труб з легованої сталі<br>діаметром 122 мм., 300 мм. | TECHNICAL CHARACTERISTICS<br>of seamless alloy steel pipes having diameters<br>122mm, 300mm |
|---|---|
| 1.Матеріал труб – легована сталь марки 817М40. | 1. Material of pipe – alloy steel 817M40. |
| 2 Хімічний склад сталі: | 2. Chemical composition of steel: |

| Компонент: | Процентний вміст: | Component: | Percentage: |
|---|---|---|---|
| Вуглець | 0,36-0,44% | Carbon | 0.36-0.44% |
| Кремній | 0,10-0,35% | Silicon | 0.10-0.35% |
| Марганець | 0,45-0,70% | Manganese | 0.45-0.70% |
| Сірка, не більше | 0,040 | Sulphur, max. | 0.040 |
| Фосфор, не більше | 0,035 | Phosphorus, max. | 0.035 |
| Хром | 1,00-1,40% | Chromium | 1.00-1.40% |
| Молібден | 0,20-0,35% | Molybdenum | 0.20-0.35% |
| Нікель | 1,30-1,70% | Nickel | 1.30-1.70% |

3. Фізико-механічні властивості сталі:

3. Physical and mechanical properties of steel:

| Найменування параметру: | Значення: | Parameter: | Value: |
|---|---|---|---|
| Межа міцності, МПа, не менш. | 1800 | Tensile strength, MPa, min. | 1800 |
| Межа текучості, МПа, не менш. | 1600 | Yield stress, MPa, min. | 1600 |
| Твердість, НВ не менш. | 440 | Hardness, HB min. | 440 |

| 4. Допуск на внутрішній діаметр труби складає -0,3+0,5 мм. | 4. Pipe inner diameter tolerance is -0.3+0.5 mm. |
|---|---|
| 5. Контроль суцільності труб виконати неруйнівним методом з обсязі 100%. | 5. Pipe continuity check shall be carried out by non-destruc method to the extent of 100%. |
| 6. Задирки, забоїни і раковини на поверхні труб не допускаються. | 6. No tears, dints and cavities are allowed on pipe surface. |
| 7. Розмір труб повинен відповідати ескізам (Додаток 4, 5 даного Контракту). | 7. Pipe dimensions shall comply with Sketches (Attachments 4, 5 to this Contract). |
| **Підписано від імені Продавця /Signed on behalf of the Seller** | **Підписано від імені Покупця /Signed on behalf of the Buyer** |
| **PETROLEUM & MATERIALS LLC**<br>Генеральный директор<br>General Director<br><br>Dewan Bachai<br>M/P/Seal | **ДП «НВО «ПХЗ» / SE RIC «PCP»**<br>Генеральный директор<br>General Director<br><br>Mr. Leonid Shyman /<br>Л. М. Шиман<br>M/P Seal |

Додаток 4 / Annex 4

до Контракту №400023-16 від 10.10.2016р.
to Contract No400023-16 dated 10.10.2016

### Ескіз безшовної труби з легованої сталі марки 817М40, Ø 300 мм/ Sketch of seamless alloy steel pipe, grade 817M40, Ø 300 mm



| Підписано від імені Продавця /Signed on behalf of the Seller | Підписано від імені Покупця /Signed on behalf of the Buyer |
|---|---|
| **PETROLEUM & MATERIALS LLC** | **ДП «НВО «ПХЗ» / SE RIC «PCP»** |
| Генеральный директор / General Director | Генеральний директор ДП «НВО «ПХЗ» - Головний конструктор РДТП / General Director of SE RIC PCP - General Designer of SPRM |
| м.п./Seal          Dewan Bachai | Mr. Leonid Shyman / Л.М. Шиман |

Додаток 5 / Annex 5

до Контракту №400023-16 від 10.10.2016р.
to Contract No400023-16  dated 10.10.2016

## Ескіз безшовної труби з легованої сталі марки 817М40, Ø 122 мм/ Sketch of seamless alloy steel pipe, grade 817М40, Ø 122 mm



| Підписано від імені Продавця /Signed on behalf of the Seller | Підписано від імені Покупця /Signed on behalf of the Buyer |
|---|---|
| **PETROLEUM & MATERIALS LLC** | **ДП «НВО «ПХЗ» / SE RIC «PCP»** |
| Генеральный директор / General Director | Генеральний директор ДП «НВО «ПХЗ» — головний конструктор РДТП / General Director SE RIC «PCP» - General Designer of SPRM |
|  | м.п./Seal                                  Mr. Leonid Shyman  / |

The only copy I have NEVER signed NOR sealed with a rubber stamp.

SENT TO ME BY EMAIL

*10.10.2016*   *10.10.2016*

| | |
|---|---|
| PETROLEUM & MATERIALS LLC, 350 Veterans Memmorial Hwy. Commack, штат Нью-Йорк 11725 | PETROLEUM & MATERIALS LLC, 350 Veterans Memmorial Hwy. Commack, New York 11725, |
| іменоване надалі "Продавець", в особі Генерального директора Dewan Bachai, що діє на підставі Установчого договору і Уставу компанії, з однієї сторони, і | hereinafter referred to as the "Seller", represented by General Director Dewan Bachai acting on the basis of the Memorandum and Articles of Association on the one part, and |
| **Державне підприємство «Науково-виробниче об'єднання «Павлоградський хімічний завод» (ДП «НВО «ПХЗ»)**, м. Павлоград, Україна, іменоване в подальшому «Покупець», в особі Генерального директора ДП «НВО «ПХЗ»- Головного конструктора РДТП Шимана Леоніда Миколайовича, що діє на підставі Статуту з другої сторони далі спільно іменовані Сторони, уклали даний Контракт про нижченаведене: | **State Enterprise Research Industrial Complex Pavlograd Chemical Plant (SE RIC "PCP")**, Pavlograd, Ukraine, hereinafter referred to as **the "Byuer"**, represented by Leonid M. Shyman, General Director – General Designer of SPRM, acting on the basis of the Company Charter, on the other part, hereafter jointly referred to as the Parties, have concluded the Contract as follows: |

**1. Предмет контракту**

1.1. Продавець зобов'язується поставити, а Покупець оплатити та прийняти Товар - **Безшовні труби з легованої сталі для хімічних виробництв діаметром 308 мм.**, згідно умов даного Контракту.

1.2. Якість товару повинна відповідати стандартам або технічним вимогам заводу-виробника та підтверджуватись сертифікатом про якість, виданим заводом-виробником.

1.3. Загальна кількість Товару по Контракту – 120 (сто двадцять) метрів погонних

**2. Ціна та загальна сума Контракту**

2.1. Валюта розрахунків по Контракту – долар США (USD)

2.2. Загальна вартість Контракту складає **918 000,00 USD (дев'ятсот вісімнадцять тисяч доларів США,00 центів)**

2.3. Одиницею Товару є метр погонний та її вартість складає **7 650,00 USD (сім тисяч п'ятсот доларів США, 00 центів)** за 1 метр погонний.

**3. Строки и умови поставки**

3.1. Поставка Товару за даним Контрактом здійснюється на умовах CIF ODESSA, у строк 70 (семидесяти) календарних днів з моменту здійснення Покупцем оплати, згідно п.4.1. Контракту.

---

**1. Subject of the Contract**

1.1. The Seller shall supply and the Buyer shall pay and accept the Goods, namely **Seamless pipes made of alloy steel for chemical production with diameter of 308 mm** under the terms of this Contract.

1.2. The quality of the Goods shall meet the manufacturing plant's standatrds or technical requirements and shall be attested by a Quality Certificate issued by the manufacturing plant.

1.3. The total quantity of the Goods under the Contract is 120 (one hundred twenty) running meters.

**2. Price and total value of the Contract**

2.1. The Currency of settlements under the Contract is US dollars (USD).

2.2. The total value of the Contract amounts to **918 000,00 USD (nine hundred eighteen thousand US dollars,00 cents)**

2.3. The unit of Goods is running meter, the unit price amounts to **7 650,00 USD (seven thousand five hundred US dollars, 00 cents)** per 1 running meter.

**3. Terms and Conditions of Delivery**

3.1. The Goods under this Contract is supplied on CIF ODESSA (INCOTERMS-2010) within the period of 70 (seventy) calendar days from the date of the the implementation of the Buyer payment in accordance with clause 4.1. Contract.

Покупцю оригінали наступних документів:

- рахунок-фактуру;
- коносамент;
- сертифікат про походження Товару;
- сертифікат відповідності;
- експортну декларацію;
- пакувальні аркуші та інше.

the Buyer the following original documents:

- Invoice;
- Bill of Lading
- Certificate of Origin;
- Certificate of Conformity;
- Export Declaration
- Packing Lists etc.

3.3. Виробник Товару та країна походження вказуються в товаросупроводжувальних документах.

3.3. The manufacturer and the country of origin of the Goods shall be specified in shipping documents.

3.4. Товари повинні бути упаковані таким чином, щоб забезпечити їх збереження при тривалому транспортуванні до кінцевого пункту призначення. Продавець несе відповідальність за збитки Покупця, спричинені неналежною упаковкою.

3.4. The Goods shall be packed in such a way as to ensure its safety during long distance transportation to the final destination. The Seller is liable for the Buyer's damages caused by improper packaging.

3.5. Сторони підтверджують, що Товар який підлягає поставці по даному Контракту, перетинатиме державний кордон та буде ввезено на територію держави Україна.

3.5. The Parties confirm that the Goods to be supplied under this Contract shall cross the state border and be imported into the Ukraine territory.

## 4. Умови платежу

4.1. Розрахунок по Контракту здійснюється у порядку попередньої оплати 100% вартості Товару, в строк 10 (десяти) банківських днів після отримання Покупцем рахунку Продавця.

## 4. Terms of Payment

4.1. The payment shall be made by way of advance payment of 100% value of the Goods within 10 (ten) banking days after the Buyer's receipt of the Seller's invoice.

4.2. У разі порушення Покупцем умов платежу за цим договором Продавець має право призупинити виконання своїх зобов'язань за договором та/або анулювати Контракт і вимагати від Покупця відшкодування збитків, викликаних порушенням умов платежу.

4.2 Should the Buyer breach the terms of payment hereunder, the Seller is entitled to suspend performance of his obligations under this Contract and /or terminate this Contract, and to demand from the Buyer compensation for damages caused as a result of the breach of the terms of payment.

4.3. Усі банківські витрати на території країни Продавця будуть оплачені за рахунок Продавця, на території країни Покупця - за рахунок Покупця.

4.3. All bank charges in the Seller's country shall be paid by the Seller, and those in the Buyer's country shall be paid by the Buyer.

## 5. Здавання-прийняття

5.1. Товари вважаються зданими Продавцем і прийнятим Покупцем:

- за кількістю - згідно товаросупроводжуючих документів

- за якістю - згідно якості, яка зазначається у сертифікаті відповідності заводу-виробника та умов, зазначених у специфікації.

Остаточне приймання товарів здійснюється після їх прибуття на склад Покупця.

## 5. Acceptance

5.1 The Goods is considered to be delivered by the Seller and accepted by the Buyer as follows:

- in respect of quantity – according to the shipping documents

- in respect of quality - according to the quality specified in the manufacturing plant's Certificate of Conformity and conditions set forth in the Specification.

Final acceptance of the Goods is carried out after its arrival to the Buyer's warehouse.

5.2. Термін для пред'явлення претензій, пов'язаних з прихованими недоліками товару - 60 (шістдесят) днів з дати поставки на склад

5.2 Time for complaint related to the latent defects of the Goods is 60 (sixty) days from the date of the Goods delivery to the Buyer's warehouse.

5.3 При виявленні недостачі або невідповідності Товару технічної документації, Покупець негайно інформує про це Продавця в письмовому вигляді і запрошує представника Продавця для участі в прийманні. Якщо після закінчення 3 (трьох) днів від Продавця не отримано відповіді про участь у прийманні, подальше приймання проводиться без представника Продавця, але з обов'язковою присутністю третьої незацікавленої особи, при цьому витрати з приймання, пов'язані з участю третьої особи, відносяться на рахунок сторони, яка не з'явилася.

5.3 If found the Goods shortage or non-conformity to the technical documentation, the Buyer shall immediately inform the Seller of this fact in written form and shall invite the Seller's representative to take part in the acceptance procedure. If after 3 (three) days there is no reply from the Seller relatively taking part in the acceptance, the further acceptance procedure shall be carried out without the Seller's representative, but always in the presence of the third party. In this case the acceptance charges connected with participation of the third party shall be paid by the Party who failed to appear.

## 6. Відповідальність

## 6. Accountability

6.1. Сторони самостійно і безпосередньо несуть відповідальність за виконання цього Контракту. Ніякі претензії, позови і інші правові вимоги не можуть бути пред'явлені до держав Україна та США або до окремих їх органів за невиконання або неналежне виконання цього Контракту.

6.1. The Parties independently and directly bear responsibility for the fulfillment of the Contract. No claims, civil complaints or other legal demands should be made to the states of Ukraine and the USA or to their separate bodies for non-fulfillment or improper fulfillment of the Contract.

6.2. Продавець несе відповідальність за Контрактом за будь-яку невідповідність товару, яка існує в момент переходу ризику на Покупця, якщо навіть ця невідповідність стає очевидною тільки пізніше.

6.2. Under the present Contract the Seller is responsible for any Goods non-conformity available at the time of risk transfer to the Buyer, even if this non-conformity will appear more lately.

6.3. У разі прострочення поставки Товару більше 90 днів з дня здійснення оплати, Продавець відшкодовує всі документально підтверджені штрафні санкції, застосовані до Покупця відповідними державними органами у зв'язку з порушеннями валютного законодавства України, пов'язаному з виконанням умов цього Контракту.

6.3. In case of delay in the Goods delivery of more than 90 days from the date of the payment, the Seller shall reimburse all documented penalties applied to the Buyer by the relevant state authorities in connection with violations of the currency legislation of Ukraine related to execution of this Contract.

6.4. У разі прострочення поставки Товару, понад трьох місяців з дня здійснення Покупцем оплати, Продавець, крім сплати зазначених штрафних санкцій, повертає кошти в повному обсязі.

6.4. In case of delay in the Goods delivery of more than three months from the date of the Buyer's payment, the Seller shall return all the money besides the payment of the said fines.

6.5. Строк стягнення штрафу настає наступного дня після закінчення терміну, коли Сторона повинна була виконати свої зобов'язання за даним Контрактом.

6.5. The term of recovery of penalty comes the next day after the expiration of time when the Party should have met its obligations under the present Contract.

## 7. Форс-мажор

## 7. Force Majeure

7.1. Сторони звільняються від відповідальності за часткове або повне невиконання зобов'язань за даним Контрактом, якщо воно з'явилося наслідком нездоланної сили, а саме: стихійних

7.1. The Parties are released from responsibility for partial or complete non-execution of their liabilities under the Contract should this non-execution be caused by the force majeure circumstances including

блокади, страйків, ембарго на експорт або імпорт, урядових розпоряджень або постанов, що перешкоджають виконанню умов даного Контракту. При цьому строк виконання зобов'язань за даним Контрактом відсувається відповідно до часу, протягом якого діяли такі обставини і їхні наслідки.

operations, government prescriptions or decrees, if such circumstances have directly affected the execution of terms of the present Contract. In such case the time stipulated for the execution of the obligations under the Contract shall be extended for a period equal to that during which such circumstances and their consequences will remain in force.

## 8. Арбітраж

8.1. Продавець і Покупець повинні прийняти всі можливі міри для врегулювання шляхом переговорів усіх суперечок і розбіжностей, що можуть виникнути при виконанні даного Контракту.

8.2. Якщо Сторони не прийшли до згоди, усі суперечки і розбіжності, що виникли при виконанні даного Контракту або в зв'язку з ним, будуть вирішуватися в Міжнародному Комерційному Арбітражному суді при Торгово - промисловій палаті України м. Києва, з регламентом зазначеного суду, рішення якого буде обов'язковим для обох Сторін і оскарженню не підлягає. Сторони домовилися, що правом регулюючим даний Контракт, є матеріальне право України.

## 8. Arbitration

8.1. The Seller and the Buyer shall take all possible measures to settle any disputes or differences, which may arise out of the present Contract by negotiations.

8.2. If the Parties fail to come to agreement, all the disputes and differences arisen out of the present Contract or in connection with it, will be settled in the International Commercial Arbitration Court at the Chamber of Commerce and Industry of Ukraine, Kiev in accordance with the Rules of the mentioned Court which decision will be final and binding to both Parties. The Parties have come to agreement that the law governing this Contract is the law of substance of Ukraine.

## 9. Строк дії Контракту

9.1. Даний Контракт набирає чинності після його підписання обома Сторонами та діє до 31.12.2017р.

9.2. Закінчення строку дії даного Контракту не звільняє Сторони від відповідальності за його порушення, яке мало місце на протязі дії даного Контракту.

## 9. Contract Validity Term

9.1. The present Contract comes into force after its signing by the both Parties and shall be valid till 31/12/2017.

9.2. The termination of validity of the present Contract does not release the Parties from the responsibility for its breach which took place during the validity of the present Contract.

## 10. Інші умови

10.1. Даний Контракт складений у 2-х екземплярах по одному для кожної зі Сторін українською та англійською мовами, причому обидва тексти мають однакову юридичну силу.

10.2. Усі доповнення і зміни до Контракту будуть дійсні за умови, що вони будуть зроблені в письмовій формі і підписані обома Сторонами.

10.3. Факсимільні екземпляри даного Контракту, усіх можливих змін і доповнень до нього й інших контрактних документів мають юридичну силу до заміни їх оригіналами.

## 10. Other Conditions

10.1. The Present Contract is made in 2 copies - one copy for each Party in the Ukrainian and the English languages, and both texts have identical legal force.

10.2. All Addenda and Modifications to the Contract are valid under the condition they will be made in written form and signed by the both Parties.

10.3. The facsimile copies of the Contract, all possible Modifications and Addendums to it as well as other contractual documents have legal force till their replacement by originals.

**PETROLEUM & MATERIALS LLC**
350 Veterans Memmorial Hwy. Commack, NY 11725
NewYork USA
account type: 813302358

**Банківські реквізити**

Банк-отримувач:
J.P. MORGAN CHASE BANK, New York, USA
ABA Routing number 021000021
Swift: CHASUS33
Chase 270 Park Ave., New York, NY 10017.

Адреса філії-одержувача:
39 Vanderbilt Parkway Commack, NY 11725
NewYork USA

**PETROLEUM & MATERIALS LLC**
350 Veterans Memmorial Hwy. Commack, NY 11725
NewYork USA
account type: 813302358

**Bank details:**

Bank-receiver:
J.P. MORGAN CHASE BANK, New York, USA
ABA Routing number 021000021
Swift: CHASUS33
Chase 270 Park Ave., New York, NY 10017.

Branch address-recipient:
39 Vanderbilt Parkway Commack, NY 11725
New York, USA

**11.2. Покупець:**

**ДП «НВО «ПХЗ»**
Україна, 51402, м. Павлоград,
Дніпропетровська обл., вул. Заводська 44

**Банківські реквізити:**
SWIFT: UGASUAUK
JSB «UKRGASBANK», KYIV, UKRAINE
P/p 260065167
Банк посередник
J.P. MORGAN CHASE BANK, New York, USA
SWIFT CHASUS33
Acc. 899579957

**11.2. The Buyer:**

**SE RIC PCP**
44, Zavodska Str., Pavlogrovsk region, Ukraine, 51402

**Bank details:**
SWIFT: UGASUAUK
JSB «UKRGASBANK», KYIV, UKRAINE
acc 260065167
PAY THRU:
J.P. MORGAN CHASE BANK, New York, USA
SWIFT CHASUS33
Acc. 899579957

Підписано від імені Продавця/ Signed on behalf of the Seller

Підписано від імені Покупця/ Signed on behalf of the Buyer

**PETROLEUM & MATERIALS LLC**

Генеральный директор
General Director

_____ Dewan Bachai

**ДП «НВО «ПХЗ» / SE RIC «PCP»**

Генеральний директор ДП «НВО «ПХЗ» - Головний конструктор РНТП / General Director of SE RIC PCP - General Designer of SPRM

_____ Mr. Leonid Shyman / Л.М.Шиман

м.п./Seal